UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TEXAS EASTERN TRANSMISSION, LP | * | CIVIL ACTION |
| VERSUS | * | NO. 22-5291 |
| KARANKAWA BAY, INC. | * | SECTION "E" (2) |

**ORDER AND REASONS**

Pending before me is Plaintiff Texas Eastern Transmission, LP's Motion to Compel Discovery Responses.  ECF No. 45.  Defendant Karankawa Bay, Inc. timely filed an Opposition Memorandum.  ECF No. 46.  Plaintiff sought leave and filed a Reply Memorandum.  ECF Nos. 47, 49.  No party requested oral argument in accordance with Local Rule 78.1, and the court agrees that oral argument is unnecessary.

Having considered the record, the submissions and arguments of counsel, and the applicable law, Plaintiff Texas Eastern Transmission, LP's  Motion to Compel (ECF No. 45) is GRANTED IN PART AND DENIED IN PART for the reasons stated herein.

I. **BACKGROUND**

Plaintiff Texas Eastern Transmission, LP is a natural gas company under the Natural Gas Act, 15 U.S.C. §§ 717-717z (the "NGA") subject to the jurisdiction of the Federal Energy Regulatory Commission ("FERC").  ECF No. 23 ¶ 1.  Texas Eastern filed this eminent domain action against Defendant Karankawa Bay, Inc. pursuant to the NGA seeking to condemn Karankawa's lease rights to Oyster Bedding Ground Lease No. 28016-22 as a temporary taking in order to construct, own, operate, and maintain interconnection facilities between Texas Eastern and Venture Global Express, LLC ("Gator Express") in Plaquemines Parish, Louisiana (the "Project").  *Id*. ¶¶ 7, 10, 14-18.   After Texas Eastern filed suit, Karankawa asked the court to abstain under *Burford v, Sun Oil Co.,* 319 U.S. 315 (1943) or, alternatively, to stay the case pending

arbitration before the Louisiana Oyster Lease Damage Evaluation Board ("OLDEB").  ECF No. 29-1.  On June 26, 2023, after consideration of the relevant *Burford* factors, Judge Morgan denied both requests, finding the *Burford* doctrine inapplicable and reasoning that a stay would effectively constitute an unauthorized stay of the FERC certificate.  ECF No. 33.  The governing Scheduling Order establishes a March 25, 2024, trial date and a January 9, 2024 discovery deadline.  ECF No. 31.

### A.  The Motion to Compel

Texas Eastern moves to compel full and complete responses to certain discovery requests[1] served on November 10, 2023, arguing that Karankawa refused to provide any responsive information related to its prior, current, and projected income, profits, and productions on the underlying lease, which information will assist in the calculation of damages.  ECF No. 45-1 at 1-3.  Texas Eastern asserts that Judge Morgan's June 26, 2023 Order makes clear that Louisiana law governs the determination of just compensation for takings under the NGA, Louisiana courts regard OLDEB formulas as the exclusive method to measure damages, and OLDEB's evaluation methodology requires discovery and consideration of leaseholder records such as those sought.  *Id*. at 10.  Citing a state trial court decision, Texas Eastern asserts that the plaintiffs in that matter are affiliate companies of Karankawa and those companies maintain the types of records sought here.  *Id*. at 12-13.  Texas Eastern further argues that the Louisiana legislature allows for broad discovery in OLDEB proceedings.  Thus, it argues discovery of Karankawa's financial records is proper because the scope of discovery reaches "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."[2]  *Id*. at 13-14.

---

[1] Interrogatories 2, 3, 6, 7, and 8 and Requests for Production 12, 13, 14, 15, 20, 21, and 30.
[2] *Id*. at 13-14 (citing *Vincent v. SCC Transp., LLC*, 2022 U.S. Dist. LEXIS 148571, at *3 (W.D. La. Apr. 7, 2022) (internal citation omitted)).

Karankawa opposes the motion, arguing that the discovery sought is irrelevant and disproportionate to the needs of the case because OLDEB methodologies do not require financial records. ECF No. 46. Karankawa further argues that Texas Eastern has already produced its OLDEB biologist's expert report, which does not indicate that financial records are required to calculate the value or damage of the lease. *Id*. at 7-8. Karankawa also avers that, because it does not maintain lease-by-lease financial records, it would have to produce records for all 27 oyster leases, which production would constitute a burden disproportionate to the needs of this case. *Id*. Finally, Karankawa asserts that it does not possess the documents regarding lost income, lost profits, or diversion impacts that Texas Southern seeks to discover and, even if it did, such documents would not be relevant to the OLDEB formula calculation that must occur in this case. *Id*. at 10-11.

In Reply, Texas Eastern insists that the discovery does exist, as evidenced by the *American Bay* case and Karankawa's own admissions during conferences and arguments in this court and OLDEB, and reiterates its relevance and proportionality arguments. ECF No. 49. Texas Eastern also argues that, contrary to Karankawa's assertions, discovery is not limited to the bounds of documents relied on by experts. *Id*. at 4. It also contests Karankawa's assertion that the scope of discovery is limited to 0.86 acres of land, noting that the measure of damages applicable under the NGA, Rule 71.1, and Louisiana law is the market value of the land taken plus severance damages to the remainder, hence the court must consider the entire breadth of the 69-acre lease at issue. *Id*. at 5-6.

## II.   APPLICABLE LAW

### A.  The Scope of Discovery

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is

relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable."  FED. R. CIV. P. 26(b)(1).

The threshold for relevance at the discovery stage is lower than the threshold for relevance of admissibility of evidence at the trial stage.[3]  At the discovery stage, relevance includes "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."[4]  Discovery should be allowed unless the party opposing discovery establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery."[5]  If relevance is in doubt, a court should allow discovery.[6]

Rule 26's advisory committee comments make clear that the parties and the court have a collective responsibility to ensure that discovery is proportional.  The party claiming it would suffer an undue burden or expense is typically in the best position to explain why, while the party claiming the information is important to resolve the issues in the case should be able "to explain the ways in which the underlying information bears on the issues as that party understands them." FED. R. CIV. P. advisory committee notes to 2015 amendment.  Thus, it bears the burden of making a specific objection and coming forward with specific information to address the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

---

[3] *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (citations omitted).
[4] *Id*. (citations omitted).
[5] *Dotson v. Edmonson*, No. 16-15371, 2017 WL 11535244, at *3 (E.D. La. Nov. 21, 2017) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005)).
[6] *E.E.O.C. v. Simply Storage Mgmt., L.L.C.*, 270 F.R.D. 430, 433 (S.D. Ind. 2010) (quoting *Truswal Sys. Corp. v. Hydro–Air Eng'r, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987) (internal quotations omitted)).

information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[7]

"The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." FED. R. CIV. P. advisory committee's notes to 2015 amendment.  Rule 26(b)(2)(C)(i)–(iii) directs the Court to limit the frequency or extent of discovery otherwise allowed, if it determines: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery had ample opportunity to obtain the information; or (3) the proposed discovery is outside the scope of Rule 26(b)(1).

### B. Duties in Responding to Discovery

A party served with written discovery must fully answer each request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and explain whether any responsive information or documents have been withheld.[8]  "Discovery by interrogatory requires candor in responding. . . .  The candor required is a candid statement of the information sought or of the fact that objection is made to furnishing the information."[9]

Although a party is not required to make an extensive investigation in responding to an interrogatory, it must review all sources of responsive information reasonably available and provide the responsive, relevant facts reasonably available.[10]  The fact that an interrogatory calls

---

[7] *Mir v. L–3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 226 (N.D. Tex. 2016).
[8] *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018) (citation omitted).
[9] *Dollar v. Long Mfg., N.C., Inc*., 561 F.2d 613, 616–17 (5th Cir. 1977).
[10] *Lopez* at 579 (citing 8B WRIGHT, MILLER & MARCUS, FED. PRAC. & PROC. § 2174 (3d ed. 2013)).

for a thorough response—one that will take time and effort to answer—does not make it improper.[11]  Where an interrogatory answer "'as a whole disclose[s] a conscientious endeavor to understand the question[] and to answer fully [that question],' a party's obligation under Rule 33 is satisfied."[12]

Likewise, a party must provide full and complete responses to requests for production within thirty days after being served same unless otherwise stipulated or ordered.  FED. R. CIV. P. 34(b)(2)(A).  This production must occur "no later than the time for inspection specified in the request or another reasonable time specified in the response."  FED. R. CIV. P. 26(a)(1)(A)(ii); 34(a)(1); FED. R. CIV. P. 34(b)(2)(B).[13]  A party responding to discovery must produce responsive documents not only that are within that party's actual, physical possession, but also documents that are within the party's constructive possession, custody or control.  FED. R. CIV. P. 26(a)(1)(A)(ii); 34(a)(1).  For each request, the respondent must either state that the inspection or production will be permitted or state with specificity the grounds for objection, including the reason.  FED. R. CIV. P. 34(b)(2)(B).

## III.    <u>ANALYSIS</u>

Texas Eastern has established that the information sought is relevant.  OLDEB is the legislatively created entity under the Louisiana Department of Natural Resources charged with establishing a uniform system of compensation for damage to oyster beds caused by oil and gas activity.[14]  The OLDEB statutory scheme is designed to address proposed oil or gas operations

---

[11] *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 437 (N.D. Tex. 2016) (citing *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 307–08 (5th Cir. 1973)).

[12] *Id.* (citing *Meltzer/Austin Rest. Corp. v. Benihana Nat'l. Corp.*, No. 11–542, 2013 WL 2607589, at *3 (W.D. Tex. June 10, 2013) (quoting 8B WRIGHT, MILLER & MARCUS, FED. PRAC. & PROC. § 2177 (3d ed. 2010))).

[13] A party has "control" over documents or materials that it has the legal right to obtain even though it has no copy and even if the documents are owned or possessed by a nonparty.  *Becnel v. Salas*, No. 17-17965, 2018 WL 691649, at *3 (E.D. La. Feb. 2, 2018) (citations omitted); *Monroe's Estate v. Bottle Rock Power Corp.*, No. 03-2682, 2004 WL 737463, at *10 (E.D. La. Apr. 2, 2004) (citation omitted).

[14] LA. REV. STAT. 56:700.10-14.

that will intrude on an oyster leasehold,[15] and the OLDEB statutes and related regulatory provisions, methodologies, and formulas are premised on one central feature: the performance of extensive biological surveys of the leased area before and after the scheduled oil or gas activity.[16] Using comparative data obtained from pre- and post-project surveys, damage to the water bottom and oyster stock can be calculated with OLDEB-developed formulas.[17] As Judge Morgan previously determined, OLDEB evaluation methodology is the exclusive method for calculation of damages. ECF No. 33 at 5.

The plain language of OLDEB's Uniform Evaluation Methods reflects that the assessments must be performed on a case-by-case basis using the formulas contained therein as well as "historical information provided by the Leaseholder regarding the Leaseholder's management and operation of the subject lease," which historical information will guide the "interpretation of the data provided from the biological surveys.[18] The financial information Texas Eastern seeks in Interrogatories Nos. 2, 3, 6, 7, and 8 and Requests for Production Nos. 12, 13, 14, 15, 20, 21, and 30 constitutes the type of "other relevant information" that OLDEB considers under its Uniform Evaluation Methods. As such, Karankawa cannot establish that the information sought has no conceivable relevance to any claim or defense.[19]

Karankawa's argument that the information is not discoverable because Texas Eastern's expert did not rely on it is without merit. Initially, without access to the information, the expert naturally could not rely on the data in his report. Even if he had the information and failed to reference it, Plaintiff's expert is not the ultimate trier of fact in this matter. The information at

---

[15] LA. REV. STAT. 56:700.12.

[16] LA. REV. STAT. 56:700.12(4); LA. ADMIN. CODE 43, §§ 3703, 3903.

[17] *See* Oyster Lease Damage Evaluation Board, Uniform Evaluation Methods.

[18] *Id.* ¶ I.

[19] *See Whale Capital v. Ridgeway,* No. 22-2570, 2023 WL 7220560, at *6 & n.34 (citing *Dotson v. Edmonson,* No. 16-15371, 2017 WL 11535244, at *3 (E.D. La. Nov. 21, 2017) (citing *Merrill v. Waffle House, Inc.,* 227 F.R.D. 467, 470 (N.D. Tex. 2005))).

issue falls within the scope of discovery espoused by Rule 26 and will aid the court in its calculation of damages.  Further, Texas Eastern's temporal limitation to the last five years adequately addresses any proportionality objection.

Given the relevance and proportionality of the information sought, the remaining question is whether such information exists.  Karankawa asserts that it does not maintain records of profit or income on a lease-by-lease basis, and it would be unduly burdensome to produce financial records for all 27 of its oyster leases.  ECF No. 46 at 3.  Karankawa also states that it does not possess projected lost income or profit data, nor the lost income and lost profit data for 2023, 2024, and "since 2022" sought by Texas Eastern in Interrogatories Nos. 6-8 and Requests for Production Nos. 14, 15, 20, and 21.  *Id*. at 9.  In reply, Texas Eastern argues that the data does exist by Karankawa's own admission in this and the *American Bay case*.  ECF No. 49 at 2-4.

 A party has no obligation to "create documents that do not exist" in response to a discovery request.[20]  Further, a reading of the *American Bay* decision does not establish the existence of the projected lost profit and income data sought, particularly given that the *American Bay* court simply adopted the movants' position as its reasons for judgment.  ECF No. 45-7 at 2-3.  In the absence of evidence that Karankawa possesses projected lost income and lost profit information about Lease No. 28016-22, this Court must accept Karankawa's and its counsel's sworn statement that the information does not exist.  Should Texas Eastern discover that Karankawa does, in fact, possess such projected lost income and profit information and has withheld same, it may seek appropriate relief (including sanctions under Rule 37).  At this time, however, Texas Eastern's

---

[20] *Morris v. Copart*, No. 15-724, 2016 WL 11472826, at *4 (E.D. Tex. Sept. 22, 2016), *R. & R. adopted*, 2016 WL 6608874 (E.D. Tex. Nov. 9, 2016) ("Rule 34(a) does not require a party to create documents that do not exist."); *Marchese v. Sec'y, Dep't of the Interior,* No.03-3082, 2004 WL 2297465, at *4 (Wilkinson, M.J.) (E.D. La. Oct. 12, 2004) ("Rule 34 does not require a party responding to discovery to create responsive materials, only to produce those in its possession, custody or control.").

motion regarding projected lost income and profit (Interrogatories No. 6 and 7 and Production Requests Nos. 20-21) must be denied.

As to Interrogatories Nos. 2, 3, and 8, and Requests for Production Nos. 12, 13, 14, 15, however, Karankawa will be compelled to provide full and complete responses.  Interrogatories Nos. 2 and 3 and Production Requests Nos. 12, 13, 14, and 15 seek historical financial data about Karankawa's income and profits for the last 5 years and lost income and profits since December 2022.  Although Karankawa asserts that it does not have such information as to Lease No. 28016-22 specifically, it has admitted to maintaining "meticulous, lease-by-lease QuickBook records" during conferences with the court and counsel.  *See* ECF No. 49 at 3.  To the extent Karankawa possesses information specific to Lease No. 28016-22, same must be produced.  If Karankawa does not possess lease-specific information, it must produce general profit and loss information for its oyster leases for the years 2022-2023.

As to Request for Production No. 30, which seeks "[a]ll documents concerning the estimated or anticipated impact to oyster farming in general in Barataria Bay due to diversion/sediment projects, the request is too broad.  To the extent the request seeks information about Lease No. 28016-22 specifically, however, same is relevant to the calculation of damages. Accordingly, Karankawa must produce any documents concerning the estimated or anticipated impact to oyster farming within the bounds of Lease. No. 28016-22, which oyster lease spans 69 acres in Barataria Bay.  See ECF No. 49-3 at 4.

IV.   **CONCLUSION**

Karankawa's historical financial information is relevant and proportional to the needs of this case.  To the extent Karankawa possesses information responsive to Interrogatories Nos. 2, 3, and 8, and Requests for Production Nos. 12, 13, 14, 15, and 30 it must produce same.  Given

Karankawa's representation that it does not possess projected loss income or profit data, Texas Eastern's motion is denied as to Interrogatories No. 6 and 7 and Production Requests Nos. 20-21. Accordingly, for the foregoing reasons,

IT IS ORDERED that Texas Eastern's Motion to Compel (ECF No. 45) is GRANTED IN PART AND DENIED IN PART as stated herein.  Karankawa must supplement its responses as ordered within seven (7) days, or no later than TUESDAY, JANUARY 9, 2024.

New Orleans, Louisiana, this ____2nd____ day of January, 2024.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE